IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LYNN MARIE LARSON,

        Plaintiff,

                                           OPINION AND ORDER

v.

                                           09-cv-067-bbc

MICHAEL ASTRUE,
Commissioner of Social Security,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Lynn Marie Larson, who suffers from social phobia and ankle problems, seeks reversal of a final decision of the commissioner denying her application for Supplemental Security Income under Title XVI of the Social Security Act, codified at 42 U.S.C. § 1382(c)(3)(A). Plaintiff contends that in reaching his conclusion that she was not disabled, the administrative law judge who denied her claim at the administrative level failed to give enough weight to the medical opinions in the record, including that of her treating psychiatrist, to the effect that plaintiff has severe mental limitations. In addition, plaintiff argues that the administrative law judge's

1

credibility assessment was based on a misunderstanding of the record and that the hypothetical question posed to the vocational expert was incomplete because it omitted plaintiff's limitations on fingering and grasping.

Having carefully reviewed the record and the administrative law judge's decision, I am rejecting plaintiff's arguments and affirming the commissioner's decision. The administrative law judge gave good reasons for not giving weight to the opinion of plaintiff's treating psychiatrist and properly evaluated the other medical opinions in the record, built an accurate and logical bridge between the evidence and his conclusion that plaintiff's statements concerning her limitations were not credible and included in the hypothetical all of plaintiff's alleged limitations to the extent they were supported by substantial evidence in the record.

Before setting out the facts, I note that plaintiff's brief in support of her motion for summary judgment is 66 pages in length. I previously advised plaintiff's lawyer that I would not read any brief of his that exceeded 40 pages in length unless he asked for an exemption, which he did not do in this case. This is the last time I will make an exception and consider a brief longer than 40 pages. Counsel could easily have complied with the 40-page limitation by omitting lengthy block quotes from the administrative law judge's decision, eliminating facts that are not relevant to his arguments and proofreading for redundancy.

The following facts are drawn from the administrative record (AR):

2

FACTS

A.  Background and Procedural History

Plaintiff was born on April 24, 1972.  AR 22.  She graduated from high school and completed three years of college.  AR 22, 686.  In the past, plaintiff worked as a bartender. AR 22.

Plaintiff filed an application for supplemental security income on June 25, 2004, alleging that she had been unable to work since January 1, 2004 because of a severely broken ankle.  AR 69, 80.  After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on March 5, 2004 before Administrative Law Judge William G. Brown.  The administrative law judge heard testimony from plaintiff, AR 685-96, plaintiff's witness, AR 697-700, a neutral medical expert, AR 701-707 and a neutral vocational expert, AR 708-14.  On May 4, 2007, the administrative law judge issued his decision, finding plaintiff not disabled.  AR 15-23.  This decision became the final decision of the commissioner on December 1, 2008, when the Appeals Council denied plaintiff's request for review.  AR 5-7.

3

B.  Medical Evidence

1.  Mental health treatment

Plaintiff has a long history of treatment by Dr. Bruce C. Rhoades for mental health issues, including depression.  In early January 2004, plaintiff was raped.  AR 627-28.  She began therapy with Andrea Popko on February 3, 2004.  AR 626.  Popko diagnosed post-traumatic stress disorder and major depression.  AR 623-24.

Plaintiff saw Dr. Rhoades approximately every month in 2004.

- February 9, 2004:  Rhoades diagnosed generalized anxiety disorder and post traumatic stress disorder.  He prescribed Clonidine, Temazepam, Diazepam and increased her Effexor dose.  AR 614.

- March 16, 2004:  Plaintiff reported that she was doing much better.  Rhoades noted that she was doing much better than he had anticipated.  He described plaintiff's affect as "full and appropriate" and her mood as "euthymic" (non-depressed).  He gave plaintiff a score of 70 on the Global Assessment of Functioning Score.[1]  AR 607-609.

- May 11, 2004:  Plaintiff reported an increase in drinking.  Rhoades noted that plaintiff's anxiety level was high.  Her gave her a Global Assessment of Functioning Score of 50, but noted she had full and appropriate affect and euthymic mood.  Rhoades increased plaintiff's Clonidine dose because of her dreams.  AR 604-607.

---

[1] The GAF scale reports a clinician's assessment of the individual's overall level of functioning.  Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).  A GAF of 41-50 indicates serious symptoms, 51-60 indicates moderate symptoms and 61-70 indicates mild symptoms.  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (Text Revision).

4

- June 15, 2004:  Rhoades noted that plaintiff's anxiety level was under reasonable control and that her affect and mood were appropriate.  He changed plaintiff's medication from Effexor to Wellbrutin.  AR 600-602.

- July 13, 2004:  Plaintiff reported being more depressed.  She reported being beaten up by her stepfather, who was drinking.  Rhoades prescribed Alprazolam for plaintiff's anxiety.  He assigned plaintiff a Global Assessment of Functioning Score of 60.  AR 597-98.

- August 24, 2004:  Rhoades noted that plaintiff was not doing very well.  He prescribed Paroxetine to improve plaintiff's mood.   Plaintiff's Global Assessment Functioning Score was 55.  AR 593-95.

- September 21, 2004:  Rhoades noted that plaintiff was doing really very well and that her affect and mood were good.  Her Global Assessment Functioning Score was 55.  Rhoades changed two of plaintiff's medications.  AR 589-91.

- October 19, 2004:  Plaintiff reported being more depressed.  Rhoades noted that she was considerably better and that her affect and mood were good.  However, he increased her medications.   Plaintiff's Global Assessment Functioning Score was 55.  AR 587-88.

- November 23, 2004:  Rhoades noted that plaintiff was not "making any headway" and really needed to be in therapy.  He added two medications, Modafinil and Doxepin.  Her Global Assessment Functioning Score was 55 and her mood and affect were appropriate.  AR 585-87.

- December 21, 2004:  Plaintiff reported that she was constantly tired, sleeping all night and all day.  She reported that her life was falling apart with the divorce of her parents.   Rhoades wrote that plaintiff's problem was psychodynamic rather than biological.   He prescribed Abilify for her.  Plaintiff's Global Assessment Functioning Score was 55.  AR 581.

Plaintiff continued to see Dr. Rhoades in 2005 and 2006.

- January 11, 2005:  Rhoades indicated that the Abilify did not work for plaintiff and that she was actually better without taking medications.  He

5

prescribed Seroquel.  Her Global Assessment Functioning Score was 55 and her affect and mood were appropriate.  AR 572-75.

•   April 8, 2005:  Plaintiff was not doing well.  Rhoades prescribed Diazepam and Pemoline.  Her Global Assessment Functioning Score was 55.  AR 566-69.

•   May 27, 2005:  Rhoades believed panic was plaintiff's major issue, but he noted that her affect and mood were good.  He discontinued Wellbutrin, Diazepam and Pemoline.  Plaintiff's Global Assessment Functioning Score was 50.  AR 556-59.

•   July 12, 2005:  Rhoades noted that plaintiff was doing reasonably well.  He indicated that she had full and appropriate affect and euthymic mood.  AR 553-56.

•   August 8, 2005:  Rhoades wrote that plaintiff was struggling and not doing well.  He discontinued Doxepin and prescribed Seroquel.  Plaintiff's Global Assessment Functioning Score was 50.  AR 546-50.

•   August 23, 2005:  Plaintiff reported that she was doing better on Seroquel.  Rhoades prescribed Carbamazepine to help plaintiff sleep.  Her Global Assessment Functioning Score was 55 and her affect and mood were appropriate.  AR 543-45.

•   November 23, 2005: Plaintiff reported multiple panic episodes and dissociations.  Rhoades diagnosed panic disorder with agoraphobia and dissociative identity disorder.  He prescribed Alprazolam and Lithium.  He discontinued Clonazepam and Seroquel.  Plaintiff's Global Assessment Functioning Score was 55.  AR 536-39.

•   January 5, 2006:  Rhoades discontinued Lithium and prescribed Citalopram and Lamotrigine.  Plaintiff's Global Functioning score was 50.  AR 532-33.

•   April 13, 2006:   Rhoades prescribed BuPROPion and discontinued Alprazolam, Citalopram and Lamotrigine.  Plaintiff's Global Assessment Functioning Score was 50.  AR 531.

On December 2, 2005, Dr. Rhoades completed a Mental Impairment Questionnaire for plaintiff.  He diagnosed recurrent major depression and dissociative identity disorder. He wrote that plaintiff's current Global Assessment of Functioning Score was 50, which he said was also the highest score she had achieved in the past year.  AR 469.  He indicated that plaintiff's impairment and treatment would cause her to be absent from work more than three times a month and that she would have difficulty working at a regular job on a sustained basis because of pain and depression.  AR 471.  In Rhoades's opinion, plaintiff had slight limitation in the restrictions of activities of daily living but marked difficulties in maintaining social functioning.  In addition, Rhoades concluded that plaintiff experienced frequent deficiencies of concentration, persistence or pace and that she had had three or more episodes of decompensation in a work-like setting.  AR 472.

Plaintiff participated in counseling at a mental health center between June 2005 and January 2006, but was discharged when she stopped attending the sessions.  AR 496-514. In August 2006, plaintiff began visits to a new psychiatrist, who diagnosed major depressive disorder, recurrent, mild, without psychotic features, and chronic post traumatic stress disorder.  He assigned plaintiff a Global Assessment of Functioning Score of 55.  AR 529.

2. Physical health treatment

a. Hand impairments

During the January 2004 assault, plaintiff injured her left wrist and hand.  AR 439-41.  Dr. Qingquan Fu examined plaintiff and noted swelling and tenderness around the left elbow.  Her range of motion was limited because of pain.  AR 441.  Fu ordered a bone scan, which showed a possible wrist fracture.  AR 632.

On January 13, 2004, plaintiff saw Dr. Daniel P. Lochmann, an orthopedist, who diagnosed a wrist fracture and put her in a short-arm thumb spica cast.  He ordered a follow-up x-ray out of plaster in four weeks.  AR 669.  On February 24, 2004, Lochmann removed plaintiff's cast.  An x-ray showed no displacement and good interval healing.  Lochmann placed plaintiff in a removable thumb splint and referred her to occupational therapy.  AR 666.

In October 2005, plaintiff was seen by Dr. John A. Cragg for tenderness and some loss of motion in her wrist.  AR 657.  The results of an MRI scan showed that plaintiff's wrist fracture had healed, but she had a large ganglion cyst in the same area.  AR 654.  On December 16, 2005, Cragg surgically removed the cyst from plaintiff's left wrist.  AR 475.  On June 10, 2006, Cragg wrote that plaintiff had no permanent restrictions from her wrist surgery.  AR 649.

On October 25, 2006, plaintiff saw Dr. William A. Smith for a painful lump on her right second finger.  He diagnosed osteoarthritis right hand with early Heberden node formation.  AR 636.

b.  Ankle injury

On April 4, 2004, plaintiff tripped on the steps outside a bar and injured her left ankle.  AR 312.  X-rays showed that she had sustained a trimalleolar fracture.  AR 316, 675. On April 6, 2004, Dr. Lochmann performed an open reduction and internal fixation of the fracture.  AR 339.  On April 22, 2004, plaintiff saw Lochmann, who removed her ankle staples and put her in a walkabout Cam-Walker boot.  AR 662.  X-rays taken on May 13 showed excellent interval healing of the ankle.  AR 660-61.  Plaintiff was referred to physical therapy and provided a Laser splint.  AR 661.   Plaintiff attended physical therapy from May to August 2004.  AR 389-405.   On July 7, 2004, plaintiff reported to the physical therapist that she had re-injured her ankle when she was "tustling" with her father who hit her.  AR 400.  X-rays showed no evidence of re-injury.  AR 631.  In December 2004, Lochmann described plaintiff as exhibiting a well-healed fracture with no swelling evident, although she continued to have difficulty ambulating without a brace.  AR 658.

On July 26, 2006, plaintiff saw Dr. Lochmann for left ankle pain.  Lochmann detected swelling, slight tenderness upon palpation and decreased ranges of motion, but x-rays showed

no abnormalities.  He diagnosed left ankle pain with swelling and sensitivity of the doral sensory nerve.  AR 646.  Plaintiff was provided a new ankle brace.  AR 642.

Dr. Lochmann recommended that plaintiff could be on her feet for four hours at most before she would need a 30-minute rest interval.  He also stated she should be allowed to "ice and use anti-inflammatories."  AR 646.  He completed a return to work report indicating that plaintiff could "stand four hours with 30 minutes off feet."  AR 643.

### C.  Consulting Medical Sources

On August 18, 2005, state agency consulting psychologist Anthony J. Matkom completed a Psychiatric Review Technique Form for plaintiff after reviewing the evidence of record.  He evaluated the evidence under the listing categories for affective disorders, anxiety-related disorders and substance addiction disorders.  In addressing the "B" criteria for these listings, he found plaintiff had mild restrictions of activities of daily living, moderate limitations in maintaining social functioning and moderate limitations in maintaining concentration, persistence or pace but no episodes of decompensation.  Matkom concluded that the evidence did not establish the presence of the "C" criteria.  AR 452-65.

Matkom also completed a mental residual functional capacity assessment for plaintiff. On the "Summary Conclusions" portion of the standardized form, he checked boxes indicating that plaintiff was "moderately limited" in various areas.  Expressing his opinions

10

in narrative form, Matkom wrote that "although [plaintiff] would have difficulty dealing with stressful situations and large groups of people, she should be able to do at least [simple, repetitive, low stress] work." AR 448-51.

### D.  Hearing Testimony

Plaintiff testified that she stood five feet, weighed 140 pounds and lived with her four children. AR 685. She testified that she took care of her children, cooked, did housework and laundry. She shopped, but only at night when there were fewer people in the store. AR 688-89. She testified that she had never had a problem with the use of alcohol or drugs. AR 690.

Plaintiff testified that she could not perform a full-time job because she could not stand very long without her leg hurting and that she did not do well around people she did not know. AR 687. Plaintiff testified that she had panic attacks and crying spells. AR 695-96. She testified that she took medication that helped sometimes, but that it caused her to be tired all the time and have bad sweats. AR 687-88.

Plaintiff testified that she had to wear a leg brace if she walked for a long time but that she could stand for 30 minutes. She testified that she had permanent nerve damage to the front of her ankle. AR 690-91. Plaintiff testified that she had no trouble sitting. She estimated that she could lift 15 pounds on a routine basis. According to plaintiff, she had

11

not regained all the feeling in her left hand after her December 2005 surgery.  AR 691.  She said, however, that she was able to move her fingers.  AR 692.

Plaintiff's friend and employer Paul Calliss testified that plaintiff had worked for him part-time in his resort and that she had to take breaks when she was around strangers or when her ankle swelled.  AR 698.  He testified that she did most of her grocery shopping after 10 p.m.  AR 700.

The administrative law judge called Dr. Steven Carter, a neutral medical expert, to testify about plaintiff's mental impairments.  Carter testified that plaintiff had mild restrictions of activities of daily living, marked difficulties maintaining social functioning and no limitations in maintaining concentration, persistence or pace.  He concluded that her impairment did not meet or equal any listed mental impairment.  Carter testified that she should work in a low stress environment with no exposure to large crowds or alcohol.  AR 702-705.

The administrative law judge called Mary Harris, a neutral vocational expert, to testify.  He asked her to assume an individual of plaintiff's age, education, and work experience and who had the residual functional capacity to perform light work but not climb ropes, ladders or scaffolds, work at heights or around hazards or hazardous machinery, work with large crowds or in an environment where there were drugs or alcohol.  According to the administrative law judge, this hypothetical individual would be capable of concentrating on,

12

understanding and remembering routine, repetitive instructions, carrying out routine repetitive tasks in unskilled work, interacting and getting along with coworkers and the public on a brief and superficial basis, functioning and coping with ordinary levels of supervision found in most customary work settings and tolerating the routine stressors of a routine, repetitive low-stress work setting.  Harris testified that this individual could not perform plaintiff's past work but could perform 5,000 cashier jobs, 5,000 electronics worker jobs and 4,000 hand packager jobs that existed in Wisconsin.  AR 709-11.

The administrative law judge then asked the expert to modify the sitting and standing limitations in the first hypothetical and assume that the individual could stand or walk only two hours but could sit six hours in an eight hour workday.  The expert testified that this individual could still perform the jobs of cashier, electronics worker and hand packager, but that the number of those jobs existing in Wisconsin would be reduced to 2,500, 2,000 and 3,000, respectively.  Harris testified that her testimony had been consistent with The Dictionary of Occupational Titles and the work as she understood it to be performed in the regional or national economy.  According to Harris, her estimates of the numbers of jobs available had been derived from her placement experience for the past 20 years.  AR 711-12.

E. <u>The Administrative Law Judge's Decision</u>

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis. 20 C.F.R. § 416.020. Under this test, the administrative law judge sequentially considers 1) whether the claimant is currently employed, 2) whether the claimant has a severe impairment, 3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1, 4) whether the claimant can perform his past work, and 5) whether the claimant is capable of performing work in the national economy. <u>Knight v. Chater</u>, 55 F.3d 309, 313 (7th Cir. 1995). If a claimant satisfies steps one through three, he is automatically found to be disabled. If the claimant meets steps one and two, but not three, then he must satisfy step four. <u>Id</u>. The claimant bears the burden of proof in steps one through four. If the claimant satisfies step four, the burden shifts to the Commissioner to prove that the claimant is capable of performing work in the national economy. <u>Id</u>.

At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since January 1, 2004. At step two, he found that plaintiff had severe impairments of left ankle pain, status post left ankle fracture, history of left wrist fracture, right hand osteoarthritis, affective mood disorder and anxiety disorder. AR 17. The administrative law judge found at step three that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20

14

C.F.R. 404, Subpart P, Appendix 1.  AR 18.  Evaluating the four functional areas relevant to determining the severity of mental impairments, see 20 C.F.R. § 416.920a, the administrative law judge found that plaintiff had mild limitations of daily living, moderate difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace, with no extended episodes of decompensation.  AR 19.

As part of his analysis at step four, the administrative law judge determined that plaintiff had the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, stand and walk up to six hours a day and sit six hours a day with no climbing ropes, ladders, or scaffolds and no working at heights or around hazardous machinery.  He found that plaintiff was limited to routine, repetitive instructions and tasks in unskilled work, with brief and superficial contact with coworkers and the public and ordinary supervision.  She was able to tolerate the routine stress of a routine, repetitive, low stress work setting that was drug and alcohol-free, but was not able to work with large crowds.  AR 19.  In determining this residual functional capacity, the administrative law judge found that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible.  AR 20.

At step four, the administrative law judge found that plaintiff could not perform her past relevant work as a bartender.  AR 22.  Relying on the testimony of the vocational expert, he found at step five that an individual of plaintiff's age, education, work experience

15

and residual functional capacity could perform the jobs of hand packager and electronics inspector, noting that the expert had identified 4,000 hand packager jobs and 5,000 electronic inspector jobs. Accordingly, the administrative law judge found that plaintiff was not disabled. AR 25.

OPINION

A. Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled: the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge regarding what the outcome should be. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993). Nevertheless, the court must conduct a "critical review of the evidence" before affirming the

16

commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review." Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002). When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to his conclusion. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

## B.  Medical Opinions

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions. Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005). "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances." Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion. Id.; 20 C.F.R. § 404.1527(d)(2). When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation. Id. These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other

17

factors.  20 C.F.R. § 404.1527(d)(2).  An administrative law judge must provide "good reasons" for the weight he gives a treating source opinion, id., and must base his decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

1.  Dr. Lochmann

It appears that the administrative law judge accepted Dr. Lochmann's opinion that plaintiff was limited to working four hours at a time on her feet before needing a 30-minute rest because of her left ankle injury, but he did not identify this exact limitation in his hypothetical to the vocational expert.  Instead, in the operative hypothetical, he asked the expert to assume an individual who was capable of standing or walking for six hours out of an eight hour workday or sitting for six hours out of an eight hour workday.  Plaintiff argues that "a serious question exists" whether as phrased, the hypothetical adequately captured the requirement that she take a full 30-minute break to sit and rest after standing for four hours.

This argument is not persuasive.  Even assuming that plaintiff could not take her 30-minute rest period over the lunch hour, the vocational expert still identified a significant number of jobs that plaintiff could perform even if she was more limited than Dr. Lochmann indicated.  As the commissioner points out, the administrative law judge posed a second hypothetical in which he asked the vocational expert to assume that plaintiff could be on her

18

feet for no more than two hours of an eight hour workday, to which the vocational expert responded that there would still be thousands of cashier, hand packager and electronics worker jobs that plaintiff could perform.

Plaintiff also argues that the administrative law judge failed to consider Lochmann's July 26, 2006 treatment note, in which he recommended that plaintiff should be allowed to ice her ankle and use inflammatories.  Plaintiff interprets this limitation to mean that plaintiff needed to ice her ankle at work throughout the day, arguing: "In order to do this, [plaintiff] would need unscheduled breaks to procure ice, bring it back to her work station, place it on her ankle and periodically change it throughout the day as it melted."  Reply Br. dkt. #12, at 3.  Like her first, this argument is not persuasive.  Allowing plaintiff to ice her ankle was a recommendation only and Lochmann did not include it in his return to work note.  In any case, there is no reason to believe that in recommending that plaintiff be allowed to ice her ankle, Lochmann meant that she should keep ice on it for the entire day, as plaintiff suggests.  Indeed, there is no evidence that plaintiff applied ice to her leg over the course of the entire day as she went about her activities at home.  I disagree with plaintiff that Lochmann's opinion that plaintiff be allowed to ice her ankle was a non-exertional limitation that should have been included in the hypothetical.

2.  Dr. Rhoades

19

The administrative law judge explained that although he had given Rhoades's opinion "some" weight, Rhoades's "assessment of the severity of the claimant's symptoms is not corroborated by the record as a whole including the above referenced evidence relating to the claimant's normal activities." AR 21. Discussing plaintiff's activities, the administrative law judge wrote:

> The claimant's accounts of her daily activities are not consistent with her allegation of total disability. The claimant testified that she is able to care for her children and manage the household, including doing cooking, household chores, and laundry. She has good relationships with two friends. She is able to work on a part-time basis for her friend Paul. The claimant's friend, Paul Callies, testified that the claimant works for him waitressing, bartending, and cooking on a part-time basis, although she needs to take breaks after a short period of time on her feet, and also gets nervous around strangers. He testified that the claimant is apparently able to successfully work for Mr. Callies provided she is not required to interact with strangers or stand for prolonged periods. The claimant reported to the Social Security Administration in July 2005 that on a typical day she simply lies around and cries. However, the claimant also reported that she went to work twice a week for four hours at a time, and also attended therapy on a weekly basis, along with caring for children and pets. She also reported regular visits to the houses of her friends Paul and Karen. The evidence therefore shows that the claimant is able to function in situations in which she does not feel threatened by the presence of strangers.

AR 21. The administrative law judge also noted that Rhoades's treatment notes reflected "waxing and waning symptoms" depending on situational stressors such as housing problems or family conflict, and that Rhoades had observed during numerous visits that plaintiff had a full and appropriate range of affect and euthymic mood. Id.

20

Plaintiff points out that Rhoades was a specialist in mental disorders and was her treating psychiatrist for a lengthy period of time, factors that should have weighed in favor of granting his opinion significant, if not controlling, weight. Although it is true that these factors were important, the administrative law judge was still entitled to disregard Rhoades's opinion if it was contradicted by substantial, well-supported evidence in the record. The administrative law judge had before him the opinion of the neutral medical expert, Carter, who offered the opinion that plaintiff had less severe limitations than found by Rhoades. Although it would have been improper for the administrative law judge simply to accept Carter's opinion over Rhoades's without explanation, he reviewed the evidence in the record and determined that Carter's was the better supported of the two. This was a good reason for rejecting Rhoades's opinion.

Plaintiff attacks the administrative law judge's review of the evidence, disputing both his conclusion that Rhoades's treatment notes showed that plaintiff's symptoms "waxed and waned" and his assessment of plaintiff's activities. Neither of these arguments is persuasive. Rhoades's treatment notes show that plaintiff's Global Assessment of Functioning Score fluctuated between 50 (serious symptoms) and 70 (mild symptoms), but was usually 55, indicating moderate symptoms. As the administrative law judge noted, when plaintiff's symptoms were at their worst, it was typically in connection with situational stressors such as housing problems or family conflict. Further, on numerous occasions, Rhoades reported

21

that plaintiff's symptoms of both anxiety and depression were under reasonable control, that her affect was full and appropriate and her mood was euthymic.

Overall, the administrative law judge's assessment of Rhoades's treatment notes is supported by the record. Further, even at their worst, plaintiff's symptoms were at most "serious," which, given the subjectivity of the GAF scale, is not necessarily inconsistent with the administrative law judge's conclusion that she could perform low-stress, routine jobs not requiring her to have contact with strangers.

Equally reasonable was the administrative law judge's assessment of plaintiff's daily activities, which suggest that she is not as limited as Dr. Rhoades found. According to plaintiff's own testimony, her daily activities include caring for her children, cooking, doing house work and doing laundry. Her only limitation was not being able to grocery shop when there are a lot of people in the store. As the administrative law judge pointed out, plaintiff's ability to maintain relationships with two friends and work part-time at her friend Paul's bar indicated that she could tolerate some interactions with others and could function well so long as she was not threatened by the presence of strangers.

In sum, the administrative law judge properly discounted Rhoades's opinion because substantial evidence in the record contradicted it.


3. Dr. Matkom

22

Finally, plaintiff argues that a person with the "moderate" limitations endorsed by consulting psychologist Matkom on the August 2005 Mental Residual Functional Capacity Assessment form would likely be unable to perform the jobs identified by the administrative law judge.   However, Matkom reached the opposite conclusion, finding that in spite of plaintiff's limitations, she retained the residual functional capacity to perform simple, routine, low stress work.   Johansen v. Barnhart, 314 F.3d 283, 289 (7th Cir. 2002) (ALJ's finding that plaintiff could perform repetitive, low-stress work proper in spite of consulting psychologists' conclusion that plaintiff had "moderate" limitations in 3-5 abilities listed summarily on mental RFC worksheet, where one consultant "went further and translated those findings into a specific RFC assessment, concluding that Johansen could still perform low-stress, repetitive work").   Because Matkom's opinion does not provide substantial evidence in plaintiff's favor, it is immaterial that the administrative law judge might not have given good reasons for affording it little weight.

## C.  Credibility

Plaintiff challenges the administrative law judge's determination that her testimony was not entirely credible.   This argument requires little discussion.   In general, an administrative law judge's credibility determination will be upheld unless it is "patently wrong," Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006), and here the credibility

determination surpasses that standard.   In making his credibility determination, the administrative law judge considered the following:

- Dr. Cragg's report that plaintiff had no permanent restrictions resulting from her wrist surgery.

- Dr. Lochmann's opinion that she could stand on her left ankle four hours at a time before needing a 30-minute rest.

- The absence of evidence showing that plaintiff had suffered a nerve injury in her left ankle.

- Dr. Rhoades's treatment notes showing that plaintiff's psychological symptoms waxed and waned.

- Plaintiff's daily activities, including caring for her children and managing the household, including cooking, household chores and laundry.

- Her part-time work for her friend Paul at his resort.

All of this evidence reasonably supports the administrative law judge's conclusion that plaintiff's allegations of total disability were not entirely credible.   Plaintiff attacks the accuracy of the administrative law judge's findings and the reasonableness of his conclusions, but I have already rejected these arguments.   As I have already discussed, the administrative law judge properly weighed the medical opinions and reasonably concluded that plaintiff's daily activities were inconsistent with her claim of disabling limitations.   Further, the administrative law judge gave proper consideration to the limitations imposed by Cragg and

24

Lochmann.    Plaintiff has failed to demonstrate that this is one of those rare occasions on which the court should disturb the administrative law judge's credibility finding.


### D.  Hypothetical Question

Plaintiff argues that the administrative law judge erred when he did not include in his hypothetical question to the vocational expert any limitations caused by plaintiff's severe impairments of left wrist fracture and right hand osteoarthritis.  I disagree.  Although it is true that the administrative law judge implied that plaintiff had some upper extremity limitations when he found that her history of left wrist fracture and right hand osteoarthritis were "severe" impairments, 20 C.F.R. § 416.921(impairment is not severe if it "does not significantly limit" claimant's ability to do basic work activities), he reasonably accounted for these limitations by limiting plaintiff to lifting 10 pounds frequently and 20 pounds occasionally.  Plaintiff's contention that she also has problems with grasping and fingering has no support in the record.  When asked if she had any trouble using her hands and fingers, plaintiff said only that she had some residual numbness in her left thumb.  AR 691. She stated, however, that she did not have any problems using her fingers.  AR 692. Further, plaintiff's lawyer never identified hand or finger problems as one of the reasons plaintiff could not work.  Finally, there is no evidence that any doctor found plaintiff to have

25

difficulty in grasping and fingering.  Neither Dr. Cragg nor Dr. Lochmann found that plaintiff had any limitations in the use of her hands or fingers.

Only those limitations supported by medical evidence in the record need be incorporated into the residual functional capacity finding and the hypothetical posed to the vocational expert.  Young v. Barnhart, 362 F.3d 995, 1001-02 (7th Cir. 2004); Steele, 290 F.3d at 942.  The administrative law judge did not err when he did not include limitations concerning grasping and fingering because these limitations were not supported by the medical evidence in the record.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of

Social Security is AFFIRMED and plaintiff Lynn Marie Larson's appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 16th day of October, 2009.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

27